862 A.2d 1075

**Howard Dean DUTTON**

v.

**STATE of Maryland.**

**No. 1607, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Dec. 8, 2004.

Bradford C. Peabody (Nancy S. Forster, Public Defender, on the brief), Baltimore, for appellant.

Celia Anderson Davis (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Panel: DAVIS, ADKINS, MEREDITH, JJ.

MEREDITH, J.

Howard Dean Dutton appeals from the denial of his motion to correct an allegedly illegal sentence. In that motion, Dutton asserted that, on September 9, 1999, he was already serving two sentences of differing lengths—one for 18 months, and one for 4 years—when he was sentenced to an additional 15 year term that was "to run consecutive to the sentence [singular] that you are currently serving." Dutton argued in his motion to correct an "illegal sentence" that the 15 years should begin to run after he completed the 18 month sentence rather than after he completed the 4 year sentence. The sentencing judge denied Dutton's motion. We shall affirm the decision of the circuit court.

### The Proceedings Prior to the Sentence

On September 9, 1999, Dutton appeared in the Circuit Court for Baltimore County on charges of robbery, assault, and theft. Pursuant to an agreement with the State's Attorney's office, Dutton entered an *Alford* plea to the charge of robbery, and the State entered the remaining two counts "*nolle prosse.*" The prosecutor described the terms of the plea agreement as follows:

[PROSECUTOR]: With respect to Case 99–CR–0787, pursuant to plea negotiations, the Defendant will be tendering [an] Alford guilty plea to the count of robbery. I believe that's going to be Count Number One.

The State, should the facts be sufficient, would nol pros the balance of counts, including the assault and the theft. Should the facts be sufficient, further, the State would nol pros the companion case, which involves a series of related credit card offenses. The facts of this case will become evident when I read the robbery facts. That case number is 99–CR–2766.

Again, should the facts be sufficient to support that robbery guilty plea, at the conclusion of the guilty plea, the State will submit the guidelines. The guidelines in the case call for a period of incarceration from eight to 15 years. The State will advise Your Honor of the Defendant's criminal record and is *seeking a sentence of 15 years consecutive to the four years the Defendant is currently serving now at the Division of Correction.*

The Defendant, of course, is free to argue for any sentence he feels is appropriate, including, well, whatever sentence it is, concurrent, whatever sentence he feels is appropriate.

Does that accurately reflect our plea agreement?

[DEFENSE COUNSEL]: Yes.

(Emphasis added.)

Before accepting Dutton's plea, the trial judge asked Dutton whether he was currently serving any sentence. The following exchange occurred:

THE COURT [*addressing the Defendant*]: Are you now on probation or parole?

THE WITNESS [DUTTON]: I am on parole, but I have been already taken care of through the Division of Corrections [sic], quashed or whatever by the Division of Correction.

THE COURT: *Are you currently serving a sentence?*

THE WITNESS: *Yes, sir, four years sentence for violation of probation, sir.*

THE COURT: When did that begin?

THE WITNESS: March fourth, sir.

THE COURT: How did you violate your probation?

THE WITNESS: I didn't go to Stout Street Foundation, a drug program in Denver, Colorado.

THE COURT: Where are you incarcerated?

THE WITNESS: Maryland Division of Corrections [sic] in Hagerstown, the old jail, sir.

. . .

THE COURT [*addressing the prosecutor*]: What is the maximum for robbery, Mr. Stocksdale?

MR. STOCKSDALE: Fifteen years, Your Honor.

THE COURT: Fifteen?

MR. STOCKSDALE: Yes.

THE COURT [*addressing the Defendant*]: You understand the maximum sentence for robbery, should I accept your guilty plea, is 15 years?

THE WITNESS [DUTTON]: Yes, sir.

THE COURT: I can sentence you to anything from probation up to 15 years in prison.

THE WITNESS: Yes, sir.

THE COURT: *You understand that my sentence could be concurrent or consecutive to the sentence you are currently serving?*

THE WITNESS: Yes, sir.

THE COURT: All right, you can step down.

(Emphasis added.)

After Dutton entered his plea, the prosecutor related the details of the incident, and the court found the facts sufficient to find Dutton guilty of robbery. Prior to imposing a sentence, the court heard from Dutton's counsel. Among the

remarks made by defense counsel at that point were the following comments:

[DEFENSE COUNSEL:] Your Honor, what his current status is now, *he's serving 18 months sentence for violation of probation* from Judge Kahl in the Division of Corrections [sic] that began March 4, 1999. *He's also serving four years sentence for violation of probation* in the Division of Correction from Judge Gordy in the City. That also began March 4, 1999.

. . .

I guess *the other thing I want to tell the Court and ask the Court to consider is the fact that he is serving a four years sentence right now. That's the long and short of it. It's a four years sentence and that's going to be, that's a lot of time in jail as it is right now* for him to serve for him to think about all of his transgressions I think and think about the things he's done wrong.

(Emphasis added.)

After defense counsel concluded his remarks, the trial judge heard from Dutton, and then asked the prosecutor for any additional comments. The prosecutor emphasized Dutton's multiple prior offenses, as well as the heinous nature of the present offense (which involved beating and robbing a 75 year old man), and asserted again that the State was "seeking 15 years consecutive."

### The Sentence

The judge pronounced the sentence as follows:

Taking into consideration your past criminal record and the nature of this offense, it's the judgment and sentence of this Court that you be committed to the Division of Correction for a period of 15 years to run consecutive to the sentence you are currently serving.

The court's docket entry for September 9, 1999, reflected that Dutton's sentence was for "15Y," and that it was "consecutive to present sentence." The commitment record dated

September 9, 1999, was more explicit. That form stated: "The total time to be served is Fifteen (15) years, to run: ... consecutive to the last sentence to expire of all outstanding and unserved Maryland sentences."

*Legal Proceedings Since Imposition of the Sentence*

Since September 1999, Dutton has made numerous requests for relief. On October 9, 1999, he filed both an appeal to this Court and an application for review of his sentence by a three judge circuit court panel. By order dated December 3, 1999, the appeal was treated by this Court as an application for leave to appeal. On July 12, 2001, Dutton, acting *pro se,* filed a petition for post conviction relief, and on August 28, 2001, Dutton filed a petition for modification or reduction of sentence. On September 14, 2001, the petition for modification or reduction was denied. On January 10, 2002, Dutton, through counsel, filed an amended petition for post conviction relief. The three judge panel denied relief on May 29, 2002. On December 31, 2002, the circuit court denied Dutton's petition for post conviction relief. Dutton's application for leave to appeal to this Court was denied on May 16, 2003.

On June 20, 2003, Dutton filed the motion to correct illegal sentence that is the subject of the current appeal. In his motion, Dutton pointed out that, at the time of his sentencing in this case, he was serving one sentence of 18 months as well as another sentence of 4 years. Dutton asserted: "Judge Cadigan's sentence failed to specifically state to which of these his [sic] sentence is to run consecutive." Citing *Robinson v. Lee,* 317 Md. 371, 380, 564 A.2d 395 (1989), Dutton argued in his motion that "there exists an ambiguity as to which of those two (2) sentences that Judge Cadigan's sentence must follow. If there is doubt as to a defendant's penalty, then the law directs that his punishment must be construed to favor a milder penalty over a harsher one." Accordingly, Dutton asked that his sentence be amended to specify that the 15 year sentence would run consecutive to the 18 month sentence, and that the commitment order be similarly amended.

Dutton's motion to correct illegal sentence was denied by the sentencing judge on August 12, 2003. In a memorandum opinion and order rejecting Dutton's claim, Judge Cadigan explained:

On June 20, 2003, the Defendant filed a Motion to Correct Illegal Sentence to which the State filed an answer by letter dated July 25, 2003. In his Motion, the Defendant states that this Court did not specify whether the sentence imposed on September 9, 1999 was consecutive to Judge Gordy's sentence of June 23, 1999 [the 4 year sentence] or Judge Kahl's sentence of March 4, 1999 [the 18 month sentence]. The Defendant further contends that the September 1999 sentence was to be served consecutive only to the sentence imposed by Judge Kahl on March 4, 1999 "rather than the aggregate of all preexisting unserved sentences" citing *Robinson v. Lee,* 317 Md. 371, 379, 564 A.2d 395 (1989). Finally, the Defendant claims that he was serving two sentences at the time this Court imposed the September 1999 consecutive sentence and "there exists an ambiguity as to which of those two (2) sentences that Judge Cadigan's sentence must follow" and that any ambiguity "must be construed in favor of a milder penalty over a harsher one."

This Court finds that the *Robinson v. Lee, supra,* case is distinguishable.... The issue before the Court of Appeals was to determine whether the 15 year robbery sentence was to run consecutively to the initial five year sentence imposed *or* consecutively to the aggregate of sentences unserved at the time the 15 year sentence was imposed. Since [Lee] was only serving the five year sentence when he was sentenced for the third robbery the Court of Appeals held that the 15 year sentence was consecutive to the first robbery but concurrent to the unserved second robbery. In this case, unlike *Robinson,* the Defendant was serving *both* sentences at the time that he was sentenced by this Court. Accordingly, the sentence imposed on September 9, 1999 by this Court was proper and the Defendant's Motion to Correct Illegal Sentence is denied....

*Dutton's Argument in this Court*

 Dutton noted a timely appeal. He seeks the benefit of the rule of lenity, which we recently summarized as follows in *Wilson v. Simms,* 157 Md.App. 82, 98, 849 A.2d 88 (2004):

> Under Maryland law, an ambiguity in penal statutes is to be construed against the State. *Maryland House of Correction,* 348 Md. [245,] 267, 703 A.2d 167 [ (1997) ]. Similarly, if doubt exists as to the proper penalty, punishment must be construed to favor a milder penalty. *Robinson,* 317 Md. at 380, 564 A.2d 395.

*See Scott v. State,* 379 Md. 170, 187, 840 A.2d 715 (2004); and *Mateen v. Saar,* 376 Md. 385, 397, 829 A.2d 1007 (2003).

The State acknowledges that Maryland Rule 4–345(a) provides: "The court may correct an illegal sentence at any time." The State contends, however, that Dutton's sentence was not illegal.

Dutton's brief cites only two cases—*viz., Nelson v. State,* 66 Md.App. 304, 503 A.2d 1357 (1986), and *Robinson v. Lee,* 317 Md. 371, 564 A.2d 395 (1989)—in addition to Maryland Rule 4–351(a). We find no support for Dutton's position in either Rule 4–351(a) or the *Nelson* case. In *Nelson,* this Court held that the trial court, upon revocation of the defendant's probation, could not reimpose the suspended sentences as consecutive sentences when the court had failed to designate the sentences as consecutive originally. We stated: "[W]hen the trial judge in the instant case sentenced [Nelson] at the initial sentencing proceedings, . . . his failure to designate whether [the sentences] were to be served concurrently or consecutively, rendered them concurrent." *Nelson,* 66 Md.App. at 312–13, 503 A.2d 1357. In *Nelson,* we concluded: "Where, as here, the record does not reflect whether the sentences, when imposed, were meant to run concurrently or consecutively with each other, we hold the sentences should be construed to be concurrent with each other." *Id.* at 314, 503 A.2d 1357. For a more recent application of this principle, *see Gatewood v. State,* 158 Md.App. 458, 482, 857 A.2d 590 (2004) ("There is a presumption that if the court does not specify that a

subsequently imposed sentence is to be consecutive to an earlier imposed sentence, the latter is concurrent.").

In Dutton's case, however, there was no failure on the part of the sentencing judge to designate Dutton's 15 year sentence as consecutive. Consequently, the *Nelson* case does not support Dutton's argument that his sentence is illegal.

The other case cited by Dutton—*Robinson v. Lee*—bears some similarities to Dutton's situation. In *Robinson*, the defendant (Lee) had been sentenced to 15 years "consecutive with sentence now serving." 317 Md. at 373, 564 A.2d 395. At the time that sentence was imposed, the defendant was subject to several pending unserved sentences, but there was only one specific 5 year sentence which he was at that point in time "now serving." By the time Lee's case reached the Court of Appeals, Lee had been released from custody, and the case was moot. Nevertheless, in *dicta*, the Court of Appeals stated:

> The trial judge's obligation is to articulate the period of confinement with clarity so as to facilitate the prison authority's task. Here this was not done.
>
> Fundamental fairness dictates that the defendant understand clearly what debt he must pay to society for his transgressions. If there is doubt as to the penalty, then the law directs that his punishment must be construed to favor a milder penalty over a harsher one.

*Id.* at 379–80, 564 A.2d 395 (citations omitted).

### Dutton's Sentence Is Not Illegal

The Court of Appeals recently revisited *Robinson v. Lee* in *Scott v. State*, 379 Md. 170, 186–190, 840 A.2d 715 (2004). In *Scott*, the Court reviewed a claim involving a life sentence that was "to run consecutive to sentence now serving." Like Dutton, Scott was actively serving a sentence at the time a new sentence was imposed that was to be consecutive. In 1981, Scott had been convicted of murder and sentenced to death plus consecutive sentences adding up to 95 years. He pursued various appeals of the death sentence. In the mean-

time, in 1983, Scott pleaded guilty to another murder, for which he was sentenced to life imprisonment, with the stipulation that the 1983 life sentence was "to run consecutive to sentence now serving [*i.e.,* the 1981 death sentence]." 379 Md. at 175, 840 A.2d 715. After further proceedings relative to the 1981 conviction, Scott and the State agreed to a sentence of life imprisonment for that murder. Pursuant to that agreement, in 1988, Scott's sentence for the 1981 conviction was entered as life imprisonment "with this sentence to run consecutive to the sentence imposed" in 1983 for the second murder conviction. At that point in time, Scott was subject to two sentences of life imprisonment, each of which was said to run "consecutive to" the other. When Scott filed a motion to correct illegal sentence in 1989, the court denied that motion, but modified Scott's commitment records to reflect that Scott was to serve "2 consecutive life sentences plus ninety-five years." *Id.* at 176, 840 A.2d 715.

Scott challenged this modification of his sentences by filing a petition for post conviction relief and, subsequently, by filing another motion to correct an illegal sentence. "Scott contended that, under *Robinson v. Lee,* 317 Md. 371, 564 A.2d 395 (1989), the Court of Appeals had held that the language '[consecutive to] sentence now being served' was deficient." 379 Md. at 178, 840 A.2d 715. Scott's petition for post conviction relief was denied. The circuit court concluded that the modifications of Scott's commitment records "did not 'change the substance of [Scott's] sentences,'" *id.* at 179, 840 A.2d 715, and that it was "'abundantly clear'" that Scott was "'to serve two life sentences plus ninety five years, all to be served consecutively.'" *Id.* Scott's motion to correct illegal sentence was denied by the circuit court because there was "'no fatal ambiguity or illegality in Petitioner's sentences.'" *Id.* at 180, 840 A.2d 715. Scott appealed, first to this Court, and then to the Court of Appeals, again arguing that the *Robinson* case mandated that his two life sentences not run consecutively.

The Court of Appeals rejected Scott's argument, noting, "Scott's case differs from *Robinson* in several ways." 379 Md.

at 187, 840 A.2d 715. The Court noted that the intent of Scott's sentencing judges was much clearer. The Court observed that Scott's "commitment records for the original murder conviction and related offenses ... clearly indicated the order in which they were to be served and referred to both case numbers and counts; as such, the ambiguity that arose in *Robinson* did not arise in [Scott's] instance." *Id.* at 189, 840 A.2d 715. The Court further stated in *Scott:*

> Finally, when Judge Silver imposed the life sentence in 1983, he said nothing 'expressly or by implication' that would indicate that the life sentence was to be served concurrently with Scott's other sentences; rather, he expressly indicated that the life sentence was a consecutive sentence. *See Maryland Correctional Institution v. Lee,* 362 Md. 502, 523, 766 A.2d 80, 92 (2001) (concluding that the 'trial court said nothing that expressly or by implication would indicate that each of the ... sentences was to be served concurrently with the previously imposed sentence').

*Id.* at 189–90, 840 A.2d 715.

Dutton's case is more like *Scott* than *Robinson.* To paraphrase the Court's statement in *Scott,* when Judge Cadigan announced Dutton's sentence, he said nothing expressly or by implication that would indicate that the 15 year sentence was to be served concurrently with any portion of the 4 year sentence Dutton was then serving. *See Scott,* 379 Md. at 189–90, 840 A.2d 715. The intent of Dutton's sentencing judge to impose the 15 year sentence consecutive to the 4 year sentence was clear when the sentence was announced, and has remained clear throughout these proceedings. *See Maryland Correctional Institution v. Lee,* 362 Md. 502, 524, 766 A.2d 80 (2001) ("the intention of the sentencing judge to impose a 24 year sentence was clear when the sentence was announced and has remained clear throughout these proceedings").

■ We are cognizant that we are not at liberty at this point to speculate regarding the sentencing judge's subjective intent at the time he imposed the sentence on September 9,

1999. As the Court of Appeals stated in *Costello v. State*, 240 Md. 164, 213 A.2d 739 (1965):

The law does not permit speculation as to the sentencing judge's subjective intent in order to ascertain the extent of the convicted person's punishment. Sentencing is a definite and objective matter, and it is for that reason that the only sentences known to the law are those which appear in the public records of the courts.

*Id.* at 168, 213 A.2d 739.

In *Jackson v. State*, 68 Md.App. 679, 515 A.2d 768 (1986), we were confronted with a dispute as to whether the sentence included an order to pay restitution. The defendant in that case argued that the order to pay restitution had been introduced after imposition of the sentence, and was a condition of probation, but not part of the sentence itself. (The significance of this distinction was that it determined whether the obligation to pay restitution survived the revocation of the defendant's probation.) In *Jackson*, we looked to three sources of information regarding the sentence in order to resolve the dispute regarding the terms of the sentence: (1) the transcript of the sentencing proceedings; (2) the docket entry; and (3) the order for probation. Although the sentencing transcript was unavailable in *Jackson*, we nevertheless noted that such a transcript can prove very helpful in resolving disputes regarding a judge's sentence. We stated:

The transcription of the pronouncement of the sentence in open court and its entry on the court docket are objective and tangible manifestations of the judgment, which constitute notice, not only to the accused, but to all interested parties. Therefore, the determination of the terms of the judgment ordinarily and necessarily involves review of the transcript of the proceedings and of the docket entries.

*Id.* at 687–88, 515 A.2d 768.

We have also emphasized the importance of review of the transcript in *Douglas v. State*, 130 Md.App. 666, 673, 747 A.2d 752 (2000) ("When there is a conflict between the transcript and the commitment record, unless it is shown that the

transcript is in error, the transcript prevails."); *Dedo v. State,* 105 Md.App. 438, 461–62, 660 A.2d 959 (1995) ("[W]e direct the circuit court to amend the docket entries and commitment record to reflect the two-year sentence indicated in the sentencing transcript"), *rev'd on other grounds,* 343 Md. 2, 680 A.2d 464 (1996); *Shade v. State,* 18 Md.App. 407, 411, 306 A.2d 560 (1973) ("[t]he transcript of the trial, unless shown to be in error, takes precedence over the docket entries"); and *Williams v. State,* 7 Md.App. 241, 245, 254 A.2d 376 (1969) ("Since, however, the transcript shows that the docket entry was erroneously entered, we will remand the case for correction of the docket entry. . . ."). *See also Coleman v. State,* 231 Md. 220, 222–23, 189 A.2d 616 (1963) (case remanded for correction of docket entry).

In Dutton's case, a review of the transcript supports the conclusion that the sentencing judge was referring to the 4 year sentence when he sentenced Dutton to "a period of 15 years to run consecutive to the sentence you are currently serving." When we review the transcript in its entirety, we find: (1) the prosecutor stated that the State was "seeking a sentence of 15 years consecutive to the four years the Defendant is currently serving"; (2) when the court asked the Defendant directly if he was "currently serving a sentence," Dutton replied, "Yes, sir, four years sentence for violation of probation, sir."; (3) when the defense counsel argued for something less than the maximum under the sentencing guidelines, defense counsel confirmed that Dutton was currently "serving four years sentence for violation of probation"; in the defense counsel's final plea for mercy, he stated, "the other thing I want to tell the Court and ask the Court to consider is the fact that he is serving a four years sentence right now. That's the long and short of it. It's a four years sentence and that's going to be, that's a lot of time in jail as it is right now. . . . " Against that background, we conclude that the sentencing judge was referring to Dutton's 4 year sentence when the court stated that the new sentence was to run "consecutive to the sentence you are currently serving." Unlike the situation in *Robinson,* there is no legitimate basis for

Dutton to claim now that he believed the sentencing judge was referring only to the shorter of the two sentences Dutton was then serving.

Moreover, if there was any potential ambiguity in the sentence as announced orally, such ambiguity was removed by the contemporaneous commitment record that stated more explicitly: "The total time to be served is Fifteen (15) years, to run: ... consecutive to the last sentence to expire of all outstanding and unserved Maryland sentences." This unambiguous commitment order satisfied the concern expressed in *Robinson* that a defendant be clearly apprised of the time he must serve.

Our conclusion is buttressed by this Court's holdings in *Jackson, supra,* 68 Md.App. 679, 515 A.2d 768, and *Smitley v. State,* 61 Md.App. 477, 487 A.2d 315 (1985). In *Jackson,* the transcript of the sentencing proceedings was unavailable. We noted that the docket entry was "ambiguous, either of two constructions being possible." *Id.* at 689, 515 A.2d 768. We concluded, however, that the contemporaneous order for probation was "clear beyond doubt that restitution was one of the conditions of probation," rather than part of the original sentence. We stated, "Although ... it is impossible to resolve the ambiguity in the docket entry by reference to the transcript, it is nevertheless clear that the Order for Probation and the docket entry are not necessarily inconsistent.... In other words, the Order for Probation effectively clarified the 'ambiguous' docket entry." *Id.* at 689, 515 A.2d 768. We concluded that the result was "clear," stating: "[W]hen the docket entries are viewed in tandem with the Order for Probation, any ambiguity that might exist is dispelled. As an objective matter, then, the record reflects a definite sentence." *Id.* at 690, 515 A.2d 768.

Similarly, in Dutton's case, even if the oral sentence and the docket entry were ambiguous in referring to a singular sentence, when we view the oral sentence and the docket entry in conjunction with the contemporaneous commitment order, as we said in *Jackson,* "any ambiguity that might exist is dis-

pelled." *Accord, Smitley v. State,* 61 Md.App. at 484, 487 A.2d 315 ("Although the docket entry may be a bit ambiguous as to the nature of the restitution order, the Order for Probation is not."). As in *Jackson* and *Smitley,* the commitment record was fully consistent with Judge Cadigan's oral sentence and did not contradict the oral sentence but, rather, clarified when the consecutive 15 year sentence would begin to run. Consequently, when we review the entire record of Dutton's sentence, the record reflects a new 15 year sentence that was definitely to run consecutive to the 4 year sentence that Dutton was then serving.

Accordingly, the circuit court did not err in refusing to grant Dutton's motion to correct illegal sentence.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT**